UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL LEE HILL,

Petitioner,

v.                                                            Case No.  8:04-cv-1666-T-24TGW

JAMES V. CROSBY, JR.,

Respondent.
_____/

## <u>ORDER</u>

This cause is before the Court on Michael Lee Hill's 28 U.S.C. § 2254 petition for writ

of habeas corpus.  Hill challenges his conviction and sentence entered by the Circuit Court

for the Tenth Judicial Circuit, Polk County, Florida.

BACKGROUND FACTS

In its written opinion, the state district court of appeal set out the following facts:

> The evidence at trial showed that at approximately midnight on
> February 16, 1999, four-year-old Evona Zoeckler was awakened in her
> bedroom by an intruder she described as a white male, with white
> "porcupine" hair, a blue jacket, and blue jeans. Evona testified that she was
> afraid, and testimony by her mother, Karen Bowers, and the investigating
> police officers described a hysterical little girl. At about the same time, Ms.
> Bowers was awakened by a noise in Evona's bedroom, and heard footsteps
> that appeared to proceed from Evona's bedroom to the front door. After
> receiving a description of the intruder from Evona, Ms. Bowers called 911
> and within several minutes, the police arrived at approximately 12:16 a.m. An
> investigation revealed that a screen had been cut, a jalousie removed
> affording access to the home, and that the motion/security lights at the
> residence had been unscrewed.
>
> Upon arriving at the residence, an investigating officer followed the
> sounds of barking dogs in the neighborhood to an abandoned house a short
> distance from the Bowers' residence. The house had no front door, and
> appellant, whose appearance and clothing matched Evona's description of

the intruder, was found breathing heavily on a bed on the second floor.
During a search, a pocketknife was discovered in appellant's pocket. Another
officer, using his "tracking" dog, traced  from the Bowers' residence to the
abandoned house. The investigators determined that Evona's panties had
been cut, and she told them that the intruder had touched her "buttocks."
Evona identified appellant as the intruder. Appellant subsequently confessed
to breaking into the Bowers' residence and standing over Evona in her
bedroom, although he stated that he did not remember touching her because
he had "blackouts."

Hill v. State, 772 So. 2d 19, 20-21 (Fla. 2d DCA 2000).

PROCEDURAL BACKGROUND

On March 8, 1999, Hill was charged by Information "in Count I with burglary of a

dwelling with an assault while armed with 'a knife,' and battery in Count II."  Hill v. State,

772 So. 2d at 20.  "After a jury trial, appellant [Hill] was found guilty of both charges.  The

verdict specifically provided that appellant [Hill] was guilty of 'burglary of a dwelling,' during

which appellant 'did possess a weapon,' and 'in the course of committing the burglary made

an assault or battery,' and guilty of battery as charged."  Id. On October 1, 1999, Hill was

sentenced to life in prison on the burglary charge and time-served on the battery charge.

Hill appealed.  Appellate counsel Terrence E. Kehoe, Esq., raised the following

issues:

EVIDENCE WAS INSUFFICIENT TO SUSTAIN ENHANCEMENT
ELEMENTS OF BURGLARY CONVICTION;

MR. HILL IS ENTITLED TO A NEW TRIAL WHERE TRIAL COURT
INSTRUCTED JURY ON, AND ALLOWED RETURN OF VERDICT ON,
THEORY NOT CHARGED IN INFORMATION;

CONFESSION WAS ADMITTED IN EVIDENCE IN VIOLATION OF MR.
HILL'S MIRANDA RIGHTS; NEW TRIAL REQUIRED.

On August 18, 2000, the state district court of appeal entered the written affirmance cited above. Hill v. State, 772 So. 2d at 20.

On August 22, 2001, Hill filed a pro se motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 raising four grounds for relief. (Exhibit 5). The state trial court summarily denied ground three and ordered the State to respond to the other three grounds. (Exhibit 6). After reviewing the State's response with attachments (Exhibit 7), the state trial court ordered an evidentiary hearing on grounds two and four and summarily denied ground one. (Exhibit 8).

An evidentiary hearing on the Rule 3.850 motion was held on August 9, 2002. (Exhibit 9) after which, on August 28, 2002, the state trial court denied the Rule 3.850 motion. (Exhibit 10). Represented by Jackson S. Fltye, Esq., Hill filed a timely notice of appeal, raising one issue (Exhibit 11): WAS THE APPELLANT'S TRIAL COUNSEL INEFFECTIVE BY FAILING TO RAISE THE APPROPRIATE DEFENSE DUE TO IGNORANCE OF THE LAW?

On July 30, 2003, the state district court of appeal per curiam affirmed the denial of Rule 3.850 relief. Hill v. State, 856 So. 2d 992 (Fla. 2nd DCA 2003)(table). (Exhibit 13). Hill then timely filed the present federal petition for writ of habeas corpus.

STANDARDS OF REVIEW

Because Hill filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y of Dept. of Corrections, 304 F.3d 1345,

1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of

state habeas judgments," <u>Fugate v. Head</u>, 261 F.3d 1206, 1214 (11th Cir. 2001), in order

to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002); <u>see</u>, <u>Bell</u>

<u>v. Cone</u>, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating

state-court ruling is highly deferential, which demands that state-court decisions be given

benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this

Petition.

### A.

A § 2254 application cannot be granted unless a petitioner "has exhausted the

remedies available in the courts of the State; . . ."  28 U.S.C. 2254(b)(1)(A); <u>Snowden v.</u>

<u>Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must

give the state courts an opportunity to act on his claims before he presents those claims

to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838,  842 (1999).[1]

<u>See</u> <u>also</u>, <u>Henderson v. Campbell</u>, 353 F.3d at 891 ("A state prisoner seeking federal

habeas relief cannot raise a federal constitutional claim in federal court unless he first

---

[1]  <u>O'Sullivan v. Boerckel</u>, 526 U.S. at  845, suggests a shift by the United States Supreme Court with regard to the terminology used in discussing exhaustion principles.  The majority of the [O'Sullivan] Court concluded that an issue that was not properly presented to the state court, and which can no longer be litigated under state procedural rules, did not satisfy the exhaustion requirement, and is procedurally barred from federal review. 526 U.S. at 839-840, 848. As noted by the dissenting opinion, prior case law characterized issues for which no vehicle existed for state court litigation to be exhausted but procedurally barred. 526 U.S. at 850, 852; see <u>Coleman v. Thompson</u>,  501 U.S. 722, 732 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).

There are no unexhausted claims in Hill's petition that can still be litigated in state court. If a claim is procedurally barred, federal review is precluded by virtue of that bar, and the exhaustion, or lack of exhaustion, is irrelevant. <u>O'Sullivan</u>, 526 U.S. at 848.

properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Snowden v. Singletary</u>, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting <u>Duncan v. Henry</u>,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." <u>Pruitt v. Jones</u>, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing <u>O'Sullivan</u>, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  <u>O'Sullivan</u>, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." <u>Smith v. Jones</u>, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson v. Campbell</u>, 353 F.3d at 891(quoting <u>Judd v. Haley</u>, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice,'" Hill must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982). Hill must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892.   This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary

case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Schlup 513 U.S. at 324.  This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented.  See Coleman, 501 U.S. 722,  735-36 (1991);  Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state

court's summary dismissal did not explain basis for ruling); <u>Tower v. Phillips</u>, 7 F.3d 206,

209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**B.**

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>,

335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir.

2001).  "Clearly established Federal law" is the governing legal principle, not the dicta, set

forth by the United States Supreme Court at the time the state court issues its decision.

<u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on

point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is

contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10

(2003); <u>Clark v. Crosby</u>, 335 F.3d at 1308-10; <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265

(11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established

precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that

contradicts the governing law as set forth in Supreme Court case law, or if the state court

confronts a set of facts that are materially indistinguishable from those in a decision of the

– 8 –

Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537

U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

### C.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

### D.

### Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  Id. at 687-88; see also, Wiggins v. Smith, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id. at 477.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90; Bell v. Cone, 535 U.S. 685, 698 (2002).  Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001); Meeks v. Moore, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination.  Parker v. Head, 244 F.3d at 835-837.  "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims."  Williams, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' " Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the

action that his lawyer did take. See Chandler, 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  Chandler, 218 F.3d, at 1314 n. 15.

### E.

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. Anderson v. Harless, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in Chapman v. California, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637. Although no constitutional error has occurred in Hill's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

DISCUSSION

A review of the record demonstrates that, for the reasons below, Hill's petition for writ of habeas corpus must be **DENIED**.

Ground One

Hill claims his confession was admitted in violation of his Miranda[2] rights.  Hill raised this issue on direct appeal and the state district court of appeal addressed the issue in the opinion affirming the conviction and judgment, finding that the issue had no merit.

No motion to suppress was made prior to trial. On the morning of trial, Hill's counsel moved in limine to exclude statements Hill allegedly made to Detective Smith on the basis they were obtained in violation of Miranda.  The state trial court deferred ruling on the motion until the state trial court could hear a proffer on the matter. At the "suppression hearing," [proffer]  the lone witness, Detective Smith, testified that when he initially read Hill his Miranda rights at about 2:30 a.m., Hill invoked his Miranda rights not to talk without counsel. Questioning then ceased and the detective never initiated any further conversation with Hill.

Over the course of the next several hours, Detective Smith learned that Hill was on probation and notified the probation office that Hill was in custody. Hill's probation officer, a Ms. Myers, later arrived at the police station to visit Hill. She spoke briefly with Detective Smith, who advised her that Hill had invoked his right to counsel.

There is no record of what Ms. Myers' subsequent visit with Hill entailed because neither Ms. Myers or Hill were called as witnesses at trial, although Detective Smith

---

[2] Miranda v. Arizona, 384 U.S. 436, 479 (1966).

observed Hill crying and overheard mention of the burglary to Ms. Myers.  There is also no record of how, or if, any discussion of the burglary was initiated.  However, Detective Smith proffered that when Ms. Myers left the police station, she informed him that Hill "may want to talk to him."  Detective Smith made no attempt to contact Hill.

Sometime later, a police department dispatcher notified Detective Smith that Hill requested a meeting with him.  The Lake Wales Police Department cells were equipped with an intercom system which allowed Hill to contact and make requests of the dispatcher.  The detective then had Hill brought from his cell, read him Miranda warnings again, obtained a written waiver, and listened to the confession.

The record shows that Hill's confession was freely and voluntarily given.  Once a suspect invokes his right to counsel, no further police-initiated custodial interrogation can take place unless the accused initiates further communication, exchanges, or conversations with the police.  See Edwards v. Arizona, 451 U.S. 477 (1981).  Hill initiated contact with the detective.  There is no support in the record for Hill's theory that the detective, having been thwarted in his efforts to interrogate Hill when Hill invoked his right to counsel, utilized the probation officer to do his job for him.  Interrogation of a suspect is permissible after the suspect has invoked his right to counsel when the suspect initiates contact with investigating officers and knowingly, voluntarily, and intelligently waives his constitutional rights.  See Davis v. United States, 512 U.S. 452 (1994); Oregon v. Bradshaw, 462 U.S. 1039 (1983).  Accordingly, the state trial court properly admitted Hill's confession.

Hill's argument that Smith called the probation officer to the police station and knew the probation officer would discuss the offense, so as to circumvent Miranda is spurious.

The state trial court stated, about this argument:

> Well, if I believed that was the case then I would agree with you and I'd throw this out. But I don't believe that's why he did. He said they do that on every case where they determine somebody is on probation, they notify probation. And I think that's probably very logical that they do that.
>
> If that were the case as soon as she told him, I think he wants to talk to you, Smith would have walked back there and talked to him. So I don't agree that that's what came out of his testimony that he did this all just to circumvent and get her to get a confession out of him and tell him about it or whatever. I don't find that to be the case.
>
> So if you can find me a case that says once she did it messed up the whole thing, then I will consider that in the morning. If you can't then I'm going to let it in.

(Exhibit 15, Trial Transcript p.  260)

Hill is using this federal petition as a "second bite at the apple" by alleging that Detective Smith and the Ms. Myers were involved in improper conduct related to Hill's Miranda rights.  Hill has not met his burden of showing the state trial court's ruling on this issue resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law.  Ground one does not warrant habeas corpus relief.

## Ground Two

Hill alleges he was convicted of a crime with which he was not charged. This issue was raised on direct appeal and addressed by the state district court of appeal in its opinion:

> Appellant next complains that he was charged in the burglary count only with making "an assault upon Evona Zoeckler." He argues that the jury erroneously found him guilty of committing a burglary during which he "made

an assault or battery," and that the jury's verdict was the result of the trial judge's erroneous jury instruction on "burglary with an assault or battery." Because the evidence clearly established that appellant committed both an assault and battery on Evona, we conclude that any error was harmless. We again observe that the enhancement provisions of section 810.02 are in the alternative. No distinction is made based upon which alternative is charged or found to have been committed. Therefore, a burglary charge may be enhanced if during the burglary, the defendant commits an assault or commits a battery or is armed with a "dangerous weapon."

In the instant case, appellant was separately charged with a battery in Count II. The evidence clearly demonstrated that the battery appellant was found guilty of in Count II also occurred during the burglary with an assault that he was charged with in Count I. The cases relied upon by appellant regarding this issue are distinguishable. See Helmick v. State, 569 So.2d 869 (Fla. 2d DCA 1990); Bryant v. State, 744 So.2d 1225 (Fla. 4th DCA 1999).

Hill, 772 So. 2d at 21.

Hill has not met his burden for habeas corpus relief. If error occurred, the error was harmless and Hill was not prejudiced.   Ground two does not warrant habeas corpus relief.

Ground Three

Hill alleges his conviction of burglary with an assault or battery in count I and his conviction of battery in count II, violated his double jeopardy and equal protection rights. Hill did not raise any claims related to violation of his double jeopardy or equal protection rights in his direct appeal or in his Rule 3.850 motion.   Therefore, the claims are now procedurally barred. This Circuit has long recognized this aspect of Florida law. Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir. 1983) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), cert. denied, 464 U.S. 922 (1983). Under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion. Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir.), cert. denied, 498 U.S. 832 (1990).

-16-

Hill has not shown cause to excuse his procedural default, and any claims involving double jeopardy or equal protection are barred by the two-year limitation of Rule 3.850, see Whiddon v. Dugger, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), cert. denied, 498 U.S. 834, (1990), and the state's successive petition doctrine. See e.g., Pope v. State, 702 So. 2d 221, 223 (Fla. 1997)(successive postconviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence). Even if Hill could show cause, he has not shown actual prejudice or that a fundamental miscarriage of justice will result if his claim is not addressed by this Court on the merits.

Even if the claim were not procedurally barred, the claim has no merit.  Underlying Hill's claim related to violation of his double jeopardy and equal protection rights is his contention that the state trial judge erroneously instructed the jury and erroneously allowed the use of a verdict form that differed from the charges in the information under which Hill was tried and convicted.  The information charged Hill with 1) Burglary with an assault while armed;  2) Battery.[3]  According to Hill, because the state trial court instructed the jury that Hill committed an assault or battery during the course of the burglary, and then instructed the jury that Hill was charged with committing a battery in a separate count, Hill was subjected to double jeopardy and his equal protection rights were violated.

Hill's argument is not persuasive.  Burglary in Florida is defined as follows:

"(1) entering or remaining in, (2) a structure or conveyance, and (3) with intent to commit an offense therein." State v. Waters, 436 So. 2d 66, 69 (Fla. 1983).

---

[3] A  third count for possession of less than 20 grams of cannabis was severed.

See Davis v. State, 736 So. 2d 27, 28  (Fla. 4th DCA 1999). To convict an individual for burglary, the State needs only to prove an intent to commit an offense within the structure. As the state district court of appeal pointed out in Hill's case, the assault, battery and weapon findings in the burglary charge only go to the sentence enhancement, any one of the three being sufficient for an enhancement. They [the assault, battery, and weapon findings] were not essential elements of the crime of burglary.

Because the assault, battery and weapon findings were not essential elements of the crime of burglary, the separate charge of battery in Count II did not violate Hill's double jeopardy or equal protection rights, and ground three does not warrant relief.

Ground Four

Hill alleges the evidence at trial was insufficient to sustain the enhanced sentence he received. This exact issue was raised on direct appeal. The state district court of appeal addressed the claim in its written opinion:

Appellant was sentenced to life on the burglary count and to time served on the battery count. We find no merit in appellant's assertion of error in regard to the sufficiency of the evidence or in the instructions to the jury regarding enhancement of the burglary charge. Under section 810.02(2), Florida Statutes (1997), a burglary conviction is enhanced to a life felony if the assailant, while in a dwelling or structure, commits an assault or battery or becomes armed with a "dangerous weapon." The evidence clearly establishes that appellant committed an assault and battery on Evona while in her residence.

While appellant complains that he was not proven to have been armed with a "dangerous weapon" as provided in section 810.02, we do not reach that issue. Section 810.02 provides for enhancement of a burglary charge in the alternative: If an assault or battery is committed or if the burglar is or becomes armed with a "dangerous weapon."  In addition to the language in Count I of the information that appellant committed a burglary, and during the burglary committed an assault, there was also surplus language that "in the course thereof, Michael Lee Hill carried, displayed, used, threatened to use

-18-

> or attempted to use a knife contrary to Florida Statutes 775.087 and 810.02 (LIFEFEL)."
>
> The jury verdict found appellant guilty of burglary with "an assault or battery," and that he "did possess a weapon." The burglary charge in this case was therefore properly enhanced by reason of the allegations of an assault. The finding that appellant possessed a "weapon" (not a "dangerous weapon"), adds nothing to appellant's conviction as he was charged with possessing a "knife," not of possessing "a dangerous weapon." We therefore need not engage in a debate as to whether a "knife" can constitute a "dangerous weapon" so as to enhance a burglary charge under section 810.02.

Hill at 21.

Hill is attempting in this federal petition to appeal again the legality of the enhanced sentence, on which the state district court of appeal has previously ruled.

Furthermore, whether Hill's sentence is legal under state law is solely a matter for the Florida courts to resolve. Federal courts cannot review issues based solely upon state law. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983). Even when a petition that involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. See Willeford v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976). Federal relief is available to correct only constitutional injury. Wainwright v. Goode, 464 U.S. 78 (1983); Engle. v. Isaac, 456 U.S. 107, 119 (1981).

Hill has not met his burden of showing that the state courts' rulings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Ground four does not warrant relief.

Ground Five

Hill alleges his trial counsel was ineffective for failing to call a witness, Lisa Davis, the crime scene technician who "lifted" fingerprints at the scene. Hill claims Davis would have supported the testimony of the fingerprint examiner who testified at trial that Hill's fingerprints were not found at the scene.

Hill raised this same claim in his Rule 3.850 motion.  The state trial court summarily denied the claim, stating:

> In his first ground, Defendant alleges that his counsel failed to adequately prepare for trial by not calling the crime scene technician, who lifted latent fingerprints, to testify that the fingerprints didn't belong to Defendant. The State argues that the Defendant is not entitled to relief because defense counsel called the fingerprint examiner who compared those prints with Defendant's, and that the examiner testified those prints did not belong to Defendant. The Court agrees with the State's response.

(Exhibit 7)

A stipulation of what Davis would have said was read to the jury by the trial court:

> Rather than have you wait any longer, the attorneys have agreed and stipulated that if Lisa Davis were here and if she testified, this is what she would testify to: Lisa Davis is a crime scene technician for the Sheriff's Department who processed the scene for latent fingerprints using black powder. She obtained six latent lifts from the following locations: Two cards came from the foyer tile floor, one came from the exterior jalousie window slant, and three came from the interior jalousie window slant.
>
> It is further stipulated that Lisa Davis would testify that she found a twelve-pack of Pepsi in the upstairs bedroom of the abandoned house where defendant was arrested, and one empty beer bottle.

(Exhibit 15, Trial Transcript p. 414).

Hill does not allege, in the present federal petition, what Davis' testimony would have been.  There was no question that Hill's fingerprints were not found at the scene. Hill's trial

counsel called a fingerprint expert and put on testimony to that effect.  Hill has not made any claim to the contrary.

The claim raised in the Rule 3.850 motion dealt only with trial counsel's failure to call technician Davis. In the present federal petition, Hill attempts to expand the claim by alleging that the technician could have testified the prints were not his, not those of the victim, and not those of the owners of the house. An expansive reading of his federal claim implies the fingerprint evidence not only would exclude him but also implicate some third party. To the extent that this is Hill's intent, the claim is unexhausted and procedurally defaulted.  Hill has not shown cause and prejudice to overcome the procedural default.

Ground five does not warrant habeas corpus relief.

### Ground Six

Hill alleges his counsel was ineffective for failing to raise voluntary intoxication as a defense. This claim was the subject of the evidentiary hearing during the Rule 3.850 proceedings.[4] In ruling on the claim after hearing evidence, the state trial court stated:

> At the evidentiary hearing, Defendant's trial counsel, Gregory Abaray, testified that he discussed with Defendant the defense of voluntary intoxication, but advised Defendant it was not a viable defense and it was not a viable defense.  Mr. Abaray further testified that although the Defendant confessed to committing the crime, Defendant maintained that he did not commit the crime, and that he was sleeping in bed in an abandoned house at the time of the offense. To pursue the defense of voluntary intoxication, Defendant would not be able to maintain that he did not commit the crime. Additionally, Mr. Abaray testified that he believed the Defendant had a better defense in that the victim and her mother both said that the Defendant was not the person who committed the crime. Mr. Abaray testified that even

---

[4] Ground 4 of the 3.850 motion, on which a hearing was ordered, was withdrawn prior to the evidentiary hearing. (Exhibit 9, pp. 112-113, using the stamped numbers at the lower right of the page; Exhibit 8). In Ground 4, Hill alleged that trial counsel had been ineffective for failing to pursue a plea and for threatening that if Hill insisted on testifying, counsel would withdraw from the case.

though he was mistaken about the availability of the defense of voluntary intoxication, he still would not have pursued it because it was not Defendant's best defense.

(Exhibit 10, R 166)

As can be seen by Ground nine of the present petition (below), Hill still claims he is actually innocent. If his defense is he did not commit the crime, the defense of voluntary intoxication is not appropriate. See Foster v. State, 825 So. 2d 1023, 1024-25 (Fla. 1st DCA 2002).

During the evidentiary hearing, after Hill had testified, the state trial court asked Robert VanHart, Esq., Hill's court-appointed attorney for the evidentiary hearing, whether defenses such as voluntary intoxication and entrapment presuppose that one committed the crime. The state trial court's comment focused on the fact that Hill was arguing that he did not commit the crime. Attorney Van Hart agreed with the court's logic and stated he did not know how to reconcile the defense of voluntary intoxication and a claim of innocence. (Exhibit 9, R 140-141)

Regardless of the inconsistent defenses, the testimony shows trial counsel made a tactical determination that the best defense for Hill was that Hill did not commit the crime. Tactical decisions are not subject to collateral attack. Wilson v. Wainwright, 474 So. 2d 1162 (Fla. 1985). See Anderson v. State, 467 So. 2d 781, 786 (Fla. 3d DCA 1985).

Under the stringent Williams standard, the limited inquiry in the present case is whether the state court's determination that Hill was not entitled to relief resulted in an objectively reasonable application of Strickland. See also Wellington v. Moore, 314 F.3d 1256, 1261 (11th Cir. 2002)(citing Brown v. Head, 272 F.3d 1308, 1313 (11th Cir.), cert

denied, 502 U.S. 978 (2002)) ("It is the objective reasonableness, not the correctness per

se, of the state court decision that we are to decide."). Hill has not shown that the state

court's determination was objectively unreasonable. Ground six does not warrant habeas

relief.

Ground Seven

Hill alleges his counsel was ineffective for failure to seek a plea agreement from the

State. This claim was raised in Hill's Rule 3.850 motion and summarily denied:

> In his third ground, Defendant claims that counsel was ineffective for
> failing to enter into negotiations with the State for a plea agreement. He
> alleges that had a plea been offered he would have accepted this plea based
> on the severity of the offense. A Defendant is not constitutionally guaranteed
> the right to a plea offer. Additionally, Defendant did not allege that counsel
> failed to convey a plea offer, he merely, after his trial and conviction, states
> that he might have accepted a plea. Defendant's claim is facially insufficient.

(Exhibit 6, R 83).

Hill did not appeal the summary denial of this claim and in his federal habeas corpus

petition, Hill alleges only that his counsel should have sought a plea bargain.  Hill does not

allege that if an offer had been made, that he would have accepted it, nor that the State

was interested in a plea bargain. The record is silent about any plea bargain. Hill has cited

no authority for his apparent claim he has a constitutional right to be offered a bargain in

exchange for his plea. Hill was charged with a life felony (Exhibit 16) and, based upon his

defense at trial, and arguments in his Rule 3.850 proceeding and in his federal petition, he

claimed to be actually innocent. He has not offered any evidence to demonstrate that he

would have accepted a plea even if offered a plea bargain.

Ground seven does not warrant habeas corpus relief.

Ground Eight

Hill alleges his trial counsel was ineffective for failing to allow him to testify at trial. This issue was raised in Hill's Rule 3.850 motion. The state trial court ordered an evidentiary hearing on this claim, which also included a reference to his counsel's failure to arrange a plea bargain.  However, at the beginning of the evidentiary hearing, Hill withdrew the claim and  proceeded only on the voluntary intoxication claim. (Exhibit 9, R 112-113)

Hill's present claim that his trial counsel did not allow him to testify at trial has no merit. The state trial court questioned Hill, under oath, about his decision not to testify. (Exhibit 7, R 88).  As the colloquy with the trial court shows, Hill freely and knowingly indicated he knew he had the right to testify, was satisfied with the advice of his counsel, and chose to remain silent.

Ground eight does not warrant habeas corpus relief.

Ground Nine

Hill alleges he is actually innocent of the crimes of which he was convicted. Hill restates his claim of innocence made at trial, without adding any additional evidence. A claim of innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits. Schlup v. Delo, 513 U.S. at 315. To satisfy Schlup, Hill must first "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Id., at 324. Hill must then demonstrate "it is more

likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. However, the fundamental miscarriage of justice exception is available only where the petitioner supplements his constitutional claim with a colorable showing of factual innocence. The Supreme Court has never held it extends to "freestanding claims of actual innocence." Herrera v. Collins, 506 U.S. 390, 401, 405 (1993).

Here, Hill presents nothing new -- his only defense being that someone else committed the crime, he was asleep in the abandoned house, and knows nothing of the crime. This is the evidence the jury heard and rejected. Hill has not met his burden of presenting new evidence to obtain habeas corpus relief , and ground nine does not warrant relief.

Accordingly, the Court orders:

That Hill's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Hill and to close this case.

ORDERED at Tampa, Florida, on December 12, 2005.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Michael Lee Hill